UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SYDNI O'CONNELL, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 25-CV-10192-AK |
| v. | ) ) ) | |
| NEWTON PUBLIC SCHOOLS | ) ) | |
| Defendant. | ) ) ) | |

### MEMORANDUM AND ORDER ON NEWTON PUBLIC SCHOOLS' MOTION TO DISMISS

**ANGEL KELLEY, D.J.**

Sydni O'Connell ("O'Connell"), formerly Sydni Salvatore, brings this action against Newton Public Schools ("NPS"). O'Connell alleges that NPS wrongfully terminated her for non-compliance with its mandatory COVID-19 vaccination policy ("Vaccination Policy"), constituting religious discrimination and a violation of her First Amendment right to free exercise of religion. [Dkt. 1]. O'Connell brings religious discrimination claims under both federal and state law, while she brings her First Amendment claim under 42 U.S.C. § 1983. NPS filed a Motion to dismiss the action in its entirety [Dkt. 12], which O'Connell opposes [Dkt. 13]. For the following reasons, NPS' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

I.  **BACKGROUND**

In September 2021, NPS, where O'Connell was working as a school psychologist, instituted a Vaccination Policy in response to the COVID-19 pandemic. [See Dkts. 1 at ¶¶ 10-11; 1-3; 12-2]. According to NPS, the Vaccination Policy maintained "consisten[cy] with public

1

health guidance and the Governor's Order."[1] [Dkt. 12-2]. The Vaccination Policy required all NPS staff to either (1) show by October 15, 2021, that they had been vaccinated with an authorized COVID-19 vaccine, or (2) request a medical or religious exemption, which NPS must approve within that same timeframe. [Dkts. 1 at ¶¶ 11-12; 12-2; 12-4]. If exempted, employees needed to either comply with weekly COVID-19 testing provided by NPS or provide NPS with weekly, independently administered, negative COVID-19 test results. [Dkts. 1 at ¶ 12; 12-2].

According to O'Connell's Complaint, she submitted a timely exemption request based on her religion, Greek Orthodox Christianity, on October 15, 2021. [Dkts. 1 at ¶¶ 13-14; 1-3]. NPS denied her exemption request, after which she submitted a grievance, which was denied on or about December 6, 2021. [Dkt. 1 at ¶¶ 15-16]. Conversely, NPS claims that O'Connell failed to disclose multiple rounds of communication between her and NPS prior to the ultimate denial of her exemption request. According to NPS, O'Connell first submitted a religious exemption request on October 8, 2021, declaring herself exempt because her "religious beliefs prevent [her] from being injected with any foreign substance." [Dkt. 12-3]. On October 12, 2021, a human resources director for NPS notified O'Connell that her request was denied because she failed to identify her "sincerely-held religious belief or support that the belief precludes vaccination." [Dkt. 12-4]. O'Connell was told she could request reconsideration but would need to submit, by October 15, a "signed affidavit from an authorized representative of [her] religious group" and

---

[1] The Vaccination Policy referenced the Governor of Massachusetts's Executive Order No. 595 (https://www.mass.gov/executive-orders/no-595-implementing-a-requirement-for-covid-19-vaccination-for-the-commonwealths-executive-department-employees), and public health guidance from the Massachusetts Department of Public Health (https://www.mass.gov/info-details/covid-19-vaccine-information), the Center for Disease Control and Prevention's August 5, 2021 "Guidance for COVID-19 Prevention in K-12 Schools" (https://stacks.cdc.gov/view/cdc/108529), and the joint "COVID-19 Guidance for Districts and Schools: Fall 2021 – July 30, 2021" memo from the Massachusetts Department of Elementary and Secondary Education and the Massachusetts Department of Public Health (https://www.boston.com/news/education/2021/07/30/ma-releases-mask-guidelines-for-the-fall-school-year/). Note that the website for the Massachusetts Department of Public Health has been updated since the Vaccination Policy was adopted.

"[r]ecent literature" from the religious group highlighting the belief(s) that prohibit the COVID-19 vaccine. [Id.].

On October 15, 2021, O'Connell submitted a second religious exemption request; in it, O'Connell identified her religion as Greek Orthodox Christianity and provided three quotations. [Dkts. 1 at ¶¶ 13-14; 1-3].  The first quotation, from a church declaration, explained that since the Greek Orthodox Church held a "categorical opposition to conducting experiments on human embryonic cells," receiving the COVID-19 vaccine would be a "contradiction" to the faith. [Dkt. 1-3].  The other two quotations, taken from religious passages, were offered as explanation for why O'Connell does not believe in "coerced medical treatment" or "putting unnecessary medicines" into her body. [Id.].  The Human Resources Office for NPS responded to O'Connell's second submission by email that same day and stated that she still had not met the threshold for exemption. [Dkt. 12-5; see also Dkt. 1 at ¶ 15].  O'Connell was given an extension, until October 20, to submit both the signed affidavit and religious literature that NPS previously requested. [Dkt. 12-5].

On October 20, 2021, O'Connell told NPS that she would not be submitting the requested materials but that she and NPS should continue to "engage in the interactive process" regarding her request. [Id.].  Later that day, NPS told O'Connell that she would be placed "on unpaid leave effective October 25th for failure to comply" with the Vaccination Policy. [Id.].  As stated above, O'Connell then at some point grieved the denial of her October 15 request.  The Newton School Committee denied that grievance around December 6, 2021. [Dkt. 1 at ¶ 16].  O'Connell was terminated from her employment with NPS on or about January 26, 2022. [Id. at ¶ 17].

3

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Reading the complaint "as a whole," the court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. See id. Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. Id. A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable. Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quotation marks omitted). Second, the court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559).

## III. DISCUSSION

### a. Religious Discrimination (Count I)

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). Similarly, Massachusetts law prohibits conditions of employment that "would require [an] individual to violate . . . [their] creed or

4

religion." Mass. Gen. Laws ch. 151B, § 4(1A). Chapter 151B, the "statute prohibiting employment discrimination based on religion[,] 'has been interpreted largely to mirror Title VII.'" Bazinet v. Beth Israel Lahey Health, Inc., 113 F.4th 9, 12 n.1 (1st Cir. 2024) (quoting Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 131 (1st Cir. 2004)).

### i. Exhaustion of Administrative Remedies

"Title VII requires an employee to file an administrative charge [with the Equal Employment Opportunity Commission ("EEOC")] as a prerequisite to commencing a civil action for employment discrimination. The purpose of that requirement is to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation." Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009). "[A] charge of discrimination under Title VII must be filed with the EEOC within 300 days of the alleged discriminatory act." Andujar v. Nortel Networks, Inc., 400 F. Supp. 2d 306, 311 (D. Mass. 2005). Before a litigant can proceed in federal court, the EEOC must either provide a right-to-sue letter to the employee or will itself bring a civil action against the employer in its capacity as an enforcement agency. See Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005). Once the EEOC issues a right-to-sue letter, a plaintiff can file a complaint in federal court within ninety days. See 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e); see also Jorge, 404 F.3d at 564.

Massachusetts employs a similar exhaustion requirement, requiring employees to file a complaint with the Massachusetts Commission Against Discrimination ("MCAD") before filing suit in court. See Dunn v. Langevin, 211 N.E.3d 1059, 1062 (Mass. 2023); Mass. Gen. Laws ch. 151B, § 9. MCAD has the same charge-filing deadline as the EEOC (within 300 days of the alleged discriminatory act); however, it has its own statutory time limit to bring a suit after filing a charge. A litigant may file a complaint in court ninety days after filing their charge with the

5

MCAD, "or sooner if a commissioner assents in writing," but no "later than three years after the alleged" discriminatory act. See Mass. Gen. Laws ch. 151B, §§ 5, 9.

In its Motion to Dismiss, NPS argues that the religious discrimination claims should be dismissed because O'Connell failed to exhaust her administrative remedies under Title VII and Chapter 151B, as required prior to filing a suit in either state or federal court. Jorge, 404 F.3d at 564; see also Fort Bend Cnty., Tex. v. Davis, 587 U.S. 541, 551 (2019) ("Title VII's charge-filing provisions speak to a party's [mandatory] procedural obligations. They require complainants to submit information to the EEOC and to wait a specified period before commencing a civil action." (citation modified)); Lebron-Rios v. U.S. Marshal Serv., 341 F.3d 7, 14 (1st Cir. 2003) ("[F]ailure to exhaust administrative remedies 'bars the courthouse door, as courts long have recognized that Title VII's charge-filing requirement is a prerequisite to the commencement of suit.'" (quoting Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999))). A plaintiff's failure to exhaust administrative remedies is an affirmative defense, which can be addressed through a motion to dismiss when the facts forming the defense are plain and clear from the plaintiff's pleadings. See Thornton v. Ipsen Biopharmaceuticals, 126 F.4th 76, 82 (1st Cir. 2025) (citing Zenon v. Guzman, 924 F.3d 611, 616 (1st Cir. 2019)); Owens v. West, 182 F. Supp. 2d 180, 190 (D. Mass. 2001).

In this case, O'Connell does not allege in her Complaint [Dkt. 1] nor raise in her Opposition [Dkt. 13] that she filed her claim with either the EEOC or MCAD; thus, she never received a right-to-sue letter from the EEOC or complied with Massachusetts state law administrative requirements. As a result, it is clear from the pleadings that O'Connell has not exhausted her administrative remedies and her claims of religious discrimination must be dismissed. See Innocent v. HarborOne Bank, 319 F. Supp. 3d 571, 573-74 (D. Mass. 2018).

One question remains: Is this dismissal with or without prejudice? The First Circuit has made clear that while dismissal without prejudice is generally appropriate if the employee still has an opportunity to file the charge with the EEOC, when "[t]he period for filing a charge ha[s] lapsed," the case should be dismissed with prejudice. Lebron-Rios, 341 F.3d at 14-15 (citing Bonilla, 194 F.3d at 278). Given the date of O'Connell's termination, she should have filed a claim with the EEOC and/or MCAD by November 22, 2022, 300 days after she was terminated—and more than three years ago. Because O'Connell can no longer timely file with either agency, her federal and state religious discrimination claims must be dismissed with prejudice and NPS' Motion to Dismiss is **GRANTED** as to O'Connell's religious discrimination claims.

### b. Free Exercise Violation (Count II)

"The First Amendment's Free Exercise Clause . . . protects religious liberty against government interference." Does 1-6 v. Mills, 16 F.4th 20, 29 (1st Cir. 2021) (citing Cantwell v. Connecticut, 310 U.S. 296, 303-04 (1940)); see also Trinity Lutheran Church of Columbia, Inc. v. Comer, 582 U.S. 449, 458 (2017) ("The First Amendment provides, in part, that 'Congress shall make no law . . . prohibiting the free exercise [of religion].'"). The Free Exercise Clause protects from unequal treatment based on religion, Trinity Lutheran, 582 U.S. at 458, and from "governmental compulsion either to do or refrain from doing an act forbidden or required by one's religion." Parker v. Hurley, 514 F.3d 87, 103, 105 (1st Cir. 2008) (citation omitted).

### i. Standard of Scrutiny

When assessing a free exercise claim, the Court must first establish the correct standard of scrutiny. "When a religiously neutral and generally applicable law incidentally burdens free exercise rights, [courts] will [employ rational basis review to determine] if it is rationally related

to a legitimate governmental interest. When a law is not neutral or generally applicable, however, [courts] may sustain it only if it is narrowly tailored to achieve a compelling governmental interest," thereby satisfying strict scrutiny. Does 1-6, 16 F.4th at 29 (citing Fulton v. City of Philadelphia, 593 U.S. 522, 532-33, 540-41 (2021)). Neutrality requires that a rule or policy does not single out religion or religious practice, while general applicability requires a law or regulation to provide equal treatment to both religious and comparable secular conduct. See id. at 29-30. A rule is "not generally applicable if it treats *any* comparable secular activity more favorably than religious exercise," Lowe v. Mills, 68 F.4th 706, 714 (1st Cir. 2023) (citation modified), or if it "invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." Fulton, 593 U.S. at 533-34 (citation modified). Thus, if NPS "reserve[d] the authority to 'grant exemptions based on the circumstances underlying each application,'" strict scrutiny must apply. Does 1-6, 16 F.4th at 30 (quoting Fulton, 593 U.S. at 534).

Although not a model of clarity, O'Connell's Complaint alleges sufficient facts to reasonably infer that strict scrutiny is the appropriate standard. Assuming all facts in the Complaint as true, while the Vaccination Policy was almost certainly neutral, it is plausible that the Vaccination Policy was not generally applicable. The Vaccination Policy allowed for two types of exemptions: (1) medical and (2) religious. In reviewing O'Connell's Complaint, it remains plausible that NPS assessed these exemptions differently, allowing NPS to grant exemptions based on the circumstances underlying each application. O'Connell alleged that NPS did, in fact, grant at least one exemption, without identifying if it was medical or religious in nature. In making her request, O'Connell was told that a religious exemption required two types of supporting documentation, an affidavit and recent literature. It remains unclear if the

8

same or similar requirements were needed for a medical exemption. Reviewing the Complaint as a whole and assuming all facts as true, it is plausible that religious exemptions were treated differently from medical exemptions, requiring additional documentation not otherwise required for the secular, medical exemption. Additionally, it remains plausible that NPS exercised discretion in determining the sufficiency of the requested "recent literature." See Lowe, 68 F.4th at 709 (requiring further factual development where potential for unequal treatment was alleged); but see Does 1-6, 16 F.4th at 30 (stating that acceptance of a written statement from a medical professional for an exemption was not an exercise of discretion). Thus, at this stage, it is reasonable to infer the Vaccination Policy was not enforced with general applicability, and as a result, strict scrutiny must apply.

### ii. Strict Scrutiny

Dismissal of O'Connell's free exercise claim at this stage would require the Court to find that, based on the facts in the Complaint, NPS' Vaccination Policy withstands strict scrutiny. See Lowe, 68 F.4th at 717-18. On this record, NPS is unable to meet that standard. Strict scrutiny requires the Vaccination Policy to "be narrowly tailored to serve a compelling state interest." Roman Cath. Diocese of Brooklyn v. Cuomo, 592 U.S. 14, 18 (2020) (citation modified). Narrow tailoring means NPS employed the "least restrictive means" possible to achieve the stated interest. Thomas v. Rev. Bd. Of Ind. Emp. Sec. Div., 450 U.S. 707, 718 (1981). In other words, if NPS could "achieve its interests in a manner that does not burden religion, it must do so." Lowe, 68 F.4th at 717 (quoting Fulton, 593 U.S. at 541).

While NPS argues, and the Court agrees, there was a compelling interest, namely the health and safety of teachers, staff, students, and the general public, it is less clear whether the policy was sufficiently narrowly tailored to achieve this interest. See Does 1-6, 16 F.4th at 32

("Few interests are more compelling than protecting public health against a deadly virus."); Jacobson, 197 U.S. at 35 ("[T]he legislature has the right to pass laws which, according to the common belief of the people, are adapted to prevent the spread of contagious diseases."). Specifically, the First Circuit has held that citing health guidance from state agencies to rationalize a vaccination policy as the "least restrictive means" does not suffice to establish the policy satisfied strict scrutiny. Lowe, 68 F.4th at 718. Overall, sufficient facts exist in the Complaint to reasonably infer that the Vaccination Policy was not the least restrictive means possible to achieve the stated compelling interest. As it remains plausible that strict scrutiny applies, which the Vaccination Policy fails to satisfy, NPS' Motion to Dismiss is **DENIED** as to O'Connell's free exercise claim.

    c. **O'Connell's Other Claims**

O'Connell's Opposition to Defendant's Motion to Dismiss [Dkt. 13] introduces new claims that are not present in her Complaint. From trying to morph her Title VII claim into a claim under 42 U.S.C. § 1983, claiming violations of the Fourteenth Amendment and the Unconstitutional Conditions Doctrine, and adding retaliation and free speech allegations, O'Connell essentially rewrites her Complaint through the Opposition. O'Connell can only add new claims by amending her original Complaint: "[A] plaintiff[] cannot, of course, add allegations or claims by furnishing them for the first time in an opposition to a motion to dismiss." Ortiz v. Jimenez-Sanchez, 98 F. Supp. 3d 357, 365 n.5 (D.P.R. 2015); see also Rasla v. Wells, No. 23-CV-12499-DJC, 2024 WL 3952752, at *2 n.2 (D. Mass. Aug. 27, 2024) ("[Plaintiff] cannot assert new claims in an opposition and, therefore, the Court does not consider these allegations."); Ellis v. N. Andover Pub. Schs., 569 F. Supp. 3d 61, 65 (D. Mass. 2021) (holding it is "well-settled" that new theories of liability may not be raised in opposition papers,

but rather an amended complaint).  Therefore, O'Connell's additional claims will not be considered here.

## IV.     CONCLUSION

For the foregoing reasons, NPS' Motion to Dismiss [Dkt. 12] is **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED**.

Dated: January 23, 2026                                              /s/ Angel Kelley
                                                                    Hon. Angel Kelley
                                                                    United States District Judge